UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DON LOMBARDO,<br>    *Plaintiff*,<br><br>v.<br><br>R.L. YOUNG, INC. d/b/a YOUNG & ASSOCIATES RAYMOND YOUNG AND LINDA YOUNG,<br>    *Defendants.*<br><br>R.L. YOUNG, INC. d/b/a YOUNG & ASSOCIATES,<br>    *Counterclaim Plaintiff*,<br><br>v.<br><br>DON LOMBARDO and DND Construction Services, LLC,<br>    *Counterclaim Defendants.* | Civil No. 3:18-CV-188 (JBA)<br><br>December 21, 2018 |

**RULING ON RULE 41(D) MOTION AND MOTION TO DISMISS**

In this diversity action, Plaintiff Don Lombardo alleges that Defendants breached a joint venture agreement, or in the alternative, a partnership or independent contractor agreement, and seeks damages, an accounting, and other equitable relief, *inter alia*. Defendant R.L. Young, Inc. d/b/a Young & Associates ("YA") has moved under Fed. R. Civ. P. 41(d) for costs incurred with Plaintiff's prior action against Defendant—which Plaintiff voluntarily dismissed—and to stay the proceedings until Plaintiff complies with such order. (Rule 41(d) Mot. [Doc. # 19].) Individual Defendants Raymond Young and Linda Young have moved to dismiss the causes of action asserted against them in Plaintiff's Second Amended Complaint. (Mot. Dismiss [Doc. # 35].)

### I. Rule 41(d) Motion

Plaintiff commenced this action against YA and Defendants Raymond and Linda Young on February 1, 2018, seeking to recover damages arising out of an independent contractor consulting relationship between Plaintiff and YA. (Rule 41(d) Mot. at 1.) Prior to filing this action, Plaintiff had commenced another lawsuit in state court against YA, which YA removed to the U.S. District Court for the District of Connecticut on June 7, 2017, and which was assigned to the Honorable Alvin Thompson. (*See* 3:17-cv-940.) In the first lawsuit, Plaintiff amended his complaint once and sought leave to amend again. (Rule 41(d) Mot. at 1.) The parties both produced documents and took depositions within the discovery deadline of March 19, 2018. (*Id.* at 2.) While Defendant's second Motion to Dismiss and Plaintiff's Motion for Leave to Amend his First Amended Complaint were still pending in the first case, Plaintiff filed this action on February 1, 2018. (*Id.*) Four days later, Plaintiff voluntarily dismissed the first lawsuit. (*Id.*)

Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: 1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d).

Plaintiff argues that "an award of costs pursuant to Rule 41(d) is discretionary and, based upon the particular circumstances here, no award of costs is appropriate[,]" because "Plaintiff had a legitimate basis for withdrawing the prior action and instituting the instant action." (Pl.'s Obj. to Rule 41(d) Mot. at 1.) In the alternative, Plaintiff argues that even if the Court awards costs, the

Court should exclude any expenditures related to work in the prior action that will be useful in the instant action, and second, that the Court should not award attorney's fees as part of costs. (*Id.* at 2.)

Plaintiff claims that "[b]ased on the information revealed during discovery [in the first lawsuit], Plaintiff believed it was necessary to expand and clarify his claims regarding the operation of [YA]." (*Id.* at 6.) Specifically, Plaintiff asserts that he learned that there was a good faith basis for a veil-piercing claim, and that "it was necessary to timely add claims related to [changes to Plaintiff's compensation in March 2012] to avoid any claims being" time-barred. (*Id.*) Plaintiff asserts that he could not "expeditiously" add the individual Youngs as parties or make additional claims "in the original action due to the pendency of YANV's second motion to dismiss." (*Id.*)

Plaintiff does not, however, explain why he did not attempt to amend to add additional parties and claims in the first lawsuit, or why, if the statute of limitations loomed on the claims against the Individual Defendants, he could not have simply filed a new case against those Defendants without dismissing the prior action against YA. Plaintiff does not dispute for the purposes of Rule 41(d) that the instant action is based on and includes at least some of the same claims against one of the same defendants as his first lawsuit.

"An award of costs under Rule 41(d) is discretionary with the court." *Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 22 (D. Conn. 1998) (citation omitted). "There is no requirement in Rule 41(d) or the relevant caselaw that a defendant must show bad faith on the part of the plaintiff

3

in order to recover costs." *Id.* "On the other hand, there is authority for plaintiffs' position that we may take into consideration plaintiffs' motive in dismissing the prior action." *Id.*

Plaintiff argues that YA failed to give any notice of its intent to file this motion and thus waived any right to seek costs pursuant to Rule 41(d). He provides no authority for this position and the text of the rule contains no notice requirement, *see* Fed. R. Civ. P. 41(d), so this argument is unavailing.

Plaintiff claims that he had no vexatious purpose for dismissing the first lawsuit and filing the instant action, asserting that in fact, he sought to avoid the waste of court resources that would result if he had filed a second separate action against the Youngs individually. (Pl.'s Obj. to Rule 41(d) Mot. at 10 n.1.) Plaintiff disregards the likelihood that his second action would have been consolidated with the first lawsuit and thus his proffered reason of conservation of judicial resources does not provide a satisfying explanation for the course of litigation conduct in which he engaged.

In briefing, Plaintiff noted that the text of Rule 41(d) references only "costs" and not "fees," which he took to mean that Defendant cannot recover attorney's fees. But at oral argument, he properly abandoned that position in light of the Second Circuit's recent holding that "district courts may award attorneys' fees as part of costs under Rule 41(d)[,]" while recognizing that the question has split circuit courts. *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 24 (2d Cir. 2018). Noting that "the entire Rule 41(d) scheme would be substantially undermined were the awarding of attorneys' fees to be precluded[,]" the Second Circuit held that "Rule 41(d) evinces an

4

unmistakable intent for a district court to be free, in its discretion, to award attorneys' fees as part of costs." *Id.* at 25.

Moreover, "[t]he need for attorneys' fees may be especially acute in the Rule 41(d) context[,]" where "litigants . . . file complaints and quickly dismiss them, perhaps in reaction to initial unfavorable rulings, or hoping for a subsequent case assignment to a judge they view as more favorable." *Id.* at 26. Such cases may involve "minor costs to the adversary other than attorneys' fees, which may be substantial." *Id.*

Plaintiff also argues that the amount in fees and costs sought by Defendant—originally identified by Defendant as $151,661.36 but subsequently increased to $237,825— is unreasonable and excessive. However, since Defendant's motion included no itemization of its costs and fees, the merits of Plaintiff's position cannot be determined at this time. At oral argument on December 11, 2018, the Court directed Defendant to file fee documentation supporting its Rule 41(d) Motion including documentation of what discovery in the first lawsuit could be utilized in this case, which currently remains in dispute. (Endorsement and Scheduling Order [Doc. # 53] ¶ 3.)

An award of costs and the issuance of a stay are separate discretionary issues under Rule 41(d), and there is nothing in the text of the rule that requires the Court to issue a stay upon an award of costs. *See* Fed. R. Civ. P. 41(d) (a district court "*may* order the plaintiff to pay all or part of the costs of that previous action" and also "*may* stay the proceedings until the plaintiff has complied" (emphases added)).

As discussed below, Plaintiff could have preserved the timeliness of his additional claims simply by filing a second action against the Youngs without dismissing the first action. Because taking that course would have avoided the unnecessary delay and ancillary litigation that resulted from the voluntary dismissal of the first action, the Court exercises its discretion to order Plaintiff to pay at least a portion of the costs of the previous action. Specifically, Plaintiff will pay for any of Defendant's costs in the previous action that do not relate to this action, including, for example, costs associated with two motions to dismiss complaints filed in the prior action. However, because a stay would only serve to cause further delay, the Court declines to stay the proceedings in the meantime.

This award of costs will include Defendant's reasonable attorney's fees. Here, Plaintiff appears to have taken the course of action that he took to start the discovery clock anew for what remained substantially the same case as before. Rule 41(d) exists to discourage plaintiffs from voluntarily dismissing and then refiling cases for precisely this type of reason.

The Joint Status Report filed on January 24, 2018 in the prior action shortly before the February 5, 2018 voluntary dismissal notes that "[a]s a result of depositions just taken, plaintiff will be seeking additional discovery and amending the complaint, including adding new parties." ([Doc. # 53], 17-cv-940-AWT.) Perplexingly, Plaintiff never did this but instead filed a new action and then voluntarily dismissed the prior action. Plaintiff offers no persuasive explanation as to why he could not have simply (1) moved to amend to add the individual defendants while also moving to extend discovery and/or (2) filed a new protective action separately in order to timely preserve

those claims, without dismissing the first action.[1] Had Plaintiff taken the latter course, this case would have been identified as related to the first action and likely consolidated with it, permitting the original judge assigned to the case to see the matter through to conclusion.[2] While Plaintiff contended at oral argument that he took the course of action that he did because he thought it would be the most efficient for the court, that assessment was not for Plaintiff alone, nor without consequence under the Rules. Plaintiff will pay Defendant's costs and fees from the previous action except those fees that bear on the current matter, insofar as the parties now are not starting from scratch in this case and some of the work in the previous action may assist the parties here in completing their discovery.

II.     **Motion to Dismiss**

Individual Defendants Raymond Young and Linda Young have moved to dismiss the causes of action asserted against them in Plaintiff's Second Amended Complaint, (Mot. Dismiss). Defendant YA does not seek dismissal of any claims asserted against it at this time.

---

[1] In his Notice of Supplemental Authority, Plaintiff contends that "[t]he filing of a motion to cite the Youngs in as Defendants would not have tolled the running of the statute of limitations and the accidental failure of suit statute" would similarly not permit him to have joined the Youngs as additional defendants if the statute of limitations had run. (Mem. Law Regarding Tolling [Doc. # 55] at 2.) Assuming without deciding that that is a correct statement of the law, Plaintiff would still have faced no statute of limitations problem, however, if he had simply filed a second lawsuit against the Individual Defendants without dismissing the first lawsuit.

[2] While Plaintiff notes that if he filed a second lawsuit in federal court against the Individual Defendants, "there is no absolute certainty that it would be consolidated with the First Lawsuit[,]"—although he did note the related case on the cover sheet of this action—(Mem. Law Regarding Tolling at 9), this fact alone does not satisfactorily explain or justify his litigation strategy. The question of whether consolidation was appropriate would be one for the Court to decide, and it indeed would have been decided by Judge Thompson one way or another had Plaintiff not voluntarily dismissed the first action four days after filing this one.

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6). "[A] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)).

### B. The Individual Defendants' Motion to Dismiss

The Individual Defendants (the Youngs) seek dismissal of all eight counts as against them. (Mot. Dismiss at 2.) Fundamentally, they claim that Plaintiff Lombardo fails to allege sufficient facts that YA is their alter ego for the purpose of piercing the corporate veil. (Mem. Law. Supp. Mot. Dismiss [Doc. # 36] at 3.)

The Youngs analyze the two theories upon which the corporate veil may be pierced, the instrumentality rule and the identity rule, arguing that Plaintiffs have not pled facts with sufficient particularity to satisfy the elements of either test. (Mem. Law. Supp. Defs.' Mot. Dismiss at 4.) Plaintiff responds that "piercing the corporate veil is a fundamentally equitable doctrine, and is particularly ill-suited for review via motion to dismiss[,]"given the fact-intensive nature of the inquiry. (Pl.'s Obj. to Mot. Dismiss at 6-8.)

The parties agree that Connecticut law applies in this diversity action. "The instrumentality rule requires . . . proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of . . . ." *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 232 (2010) (quoting *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*, 187 Conn. 544, 552-54 (1982)). Under the identity rule, a plaintiff may pierce the corporate veil where she can "'show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, [and] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.'" *Id.*

"Ordinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Id.* at 233-34 (citation omitted).

The relevant facts alleged by Plaintiff in the Second Amended Complaint ("SAC") are the following:

- The Young Defendants owned all of the stock of "YACA" (Young & Associates' California corporation). (SAC ¶ 7.)
- YACA never had a functioning Board of Directors and acted under the control of and at the direction of the Young Defendants. (Id. ¶ 8.)
- The Young Defendants owned all of the stock of "YANV" (Young & Associates' Nevada corporation). (Id. ¶ 9.)
- YANV never had a functioning Board of Directors and acted under the control of and at the direction of the Young Defendants. (Id. ¶ 10.)
- The Young Defendants were the only employees of YACA and YANV; neither corporation had any corporate officers who were employees other than the Young Defendants. (Id. ¶ 11.)
- In 2013, the Young Defendants decided to cease doing business through YACA and formed YANV to take over all of what YACA had previously been doing. (Id. ¶ 20.)
- The Young Defendants formed YANV because of their own personal relocation from California to Nevada. (Id. ¶ 21.)
- While YANV purports to have offices through the US, all of the offices are the residences of YANV's independent contractors. (Id. ¶ 26.) In addition to being the only employees of YANV, the Young Defendants make all final decisions of the corporation. (Id.)
- The Young Defendants wrongfully utilized profits due and owing to Plaintiff in order to fund YANV's continued operations. (Id. ¶ 28.) The Young Defendants have used YACA and YANV in order to insulate themselves from having to account to Plaintiff with regard to the two corporations' finances. (Id. ¶ 27.)
- The breach of agreement that Plaintiff complains of consists in part of Plaintiff being required to contribute to "so-called national overhead expenses, which included staff comprised of numerous members of the Young Defendants' family." (Id. ¶ 32.) "YANV

- and the Young Defendants have employed four of their children and a brother-in-law as so-called administrative staff of YANV." (Id.)
- Count Eight, a claim for enforcement of settlement, includes specific allegations that Defendant Raymond Young and Plaintiff negotiated a settlement, which according to Plaintiff Young reneged on and refused to sign. (Id. ¶ 51.)
- In sum, as detailed in pages 3-6 of the SAC, Plaintiff alleges that YACA and the Individual Defendants hired Plaintiff to build and expand YACA's business in the Northeast Region, and that Plaintiff expended considerable time and effort to establish the business, only to have Defendants thereafter deprive him of the profit to which he was contractually obligated by reducing his profits by "overhead expenses" that consisted at least in part of payments to other members of the Young family.

While these allegations are not irrelevant to the veil piercing inquiry, many of them are not uniquely indicia of a corporation with no independent purpose or existence and could equally be said to simply describe a closely-held corporation. Crucially, Plaintiff makes no specific allegation that YA served as "a mere shell, serving no legitimate purpose, and [was] used primarily as an intermediary to perpetuate fraud or promote injustice." *Naples*, 295 Conn. at 233. In this regard, Plaintiff merely makes the conclusory assertion that the Individual Defendants "have used YACA and YANV in order to insulate themselves from having to account to Plaintiff with regard to the two corporations' finances." Similarly, while Plaintiff makes much of the fact that YA transferred its business from a California corporation to a Nevada successor corporation, he does not allege that any assets were transferred in order to perpetuate a fraud on him or to avoid liability for existing contracts. Rather, Plaintiff alleges that he continued dealing with the Nevada corporation in the same manner as he had the California corporation, with no change.

While Plaintiff's counsel contended at oral argument that the transfer of assets was effectuated to wrongfully deprive Plaintiff of receivables that he was due, the SAC contains no specific allegations to this effect. The only specific relevant allegation is that Plaintiff "has never received a full, complete and proper accounting." (SAC ¶ 20.) But a bare allegation that Plaintiff has not received an accounting does not allow the Court to infer that the second corporation was created solely or primarily for reasons of fraud or to promote injustice.

Accordingly, because the Second Amended Complaint contains no specific allegations that would allow the Court to plausibly infer that YA served no legitimate purpose and functioned primarily to perpetuate fraud, Defendants' Motion to Dismiss is granted.

### III.  Conclusion

For the reasons set forth above, the Court grants Defendant YA's Rule 41(d) Motion, with the award of costs and fees to be determined upon Defendant's production of time-and-task records, and grants the Individual Defendants' Motion to Dismiss as to them only. As previously ordered, Defendant shall file its fee documentation by January 21, 2019. If Plaintiff chooses to file a response, it shall be filed by February 4, 2019.

        IT IS SO ORDERED.

        ____/s/_____
        Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 21st day of December 2018.